UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LIBERTY MUTUAL INSURANCE COMPANY,

                              Plaintiff,

                v.

STERLING INSURANCE COMPANY,

                            Defendants.

**MEMORANDUM AND ORDER**
19-CV-3374 (LDH) (MMH)

---

LASHANN DEARCY HALL, United States District Judge:

      Liberty Mutual Insurance Company ("Plaintiff") brings suit against Sterling Insurance Company ("Defendant") seeking a declaratory judgment and monetary damages stemming from Defendant's failure to defend an insured in a lawsuit filed in New York Supreme Court, Kings County.  Plaintiff moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment.

### UNDISPUTED FACTS[1]

      On or about August 23, 2018 Leonardo Morales brought suit in New York Supreme Court, Kings County against Elliot Braha and Live Nation, Inc., on behalf of his son, Ryan Morales.  (Def.'s 56.1 ¶ 1, ECF No. 31.)  The suit, captioned "Leonardo Morales, as Legal Guardian of Ryan Morales v. Live Nation, Inc. & Elliot Braha" (the "Tort Action") alleged that on July 29, 2019, at an REO Speedwagon concert, Ryan Morales was confronted by Braha and subjected to a battery that caused bodily injury.  (*Id.* ¶ 3; Ex. 1 ("Tort Compl.") ¶ 12, ECF No.

---

[1] The foregoing facts are undisputed unless otherwise noted.  Further, facts that were not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

29-1.)  It also alleged that Ryan Morales' injuries "were caused solely by and through the negligence and/or intentional tort of defendants, their agents, servants and/or employees, without any negligence or culpable conduct on the part of the plaintiff contributing thereto."  (Tort Compl. ¶ 19.)

At the time of the incident, Braha held a homeowners insurance policy issued by Defendant (the "Sterling Policy"), with a policy period from December 1, 2017, through December 1, 2018.  (Def.'s 56.1 ¶ 5.)  The Sterling Policy stated, in relevant part:

> Coverage L-Personal Liability
> We pay, up to our limit of liability, all sums for which any insured is legally liable because of bodily injury or property damage caused by an occurrence to which this coverage applies.
>
> We will defend (with counsel of our own choice) any suit seeking damages, provided the suit resulted from bodily injury or property damage not excluded under this coverage.  We may make any investigation and settle any claim or suit that we decide is appropriate.  We are not obligated to provide a defense after we have paid, either by judgment or settlement, an amount equal to our limit of liability.

(*Id.* ¶ 6.).  The Sterling Policy defined "bodily injury" as "bodily harm, bodily sickness or bodily disease to a person including required care, loss of services and death resulting therefrom."  (*Id.* ¶ 7.)  Occurrence is defined as "an accident, including continuous or repeated exposure to substantially similar conditions."  (*Id.* ¶ 8.)

The Sterling Policy also contained exclusions from coverage.  "[L]iability . . . caused intentionally by or at the direction of any insured" is excluded from coverage.  (*Id.* ¶ 9.)  The Policy Endorsement states:

> This personal liability coverage does not apply to liability for bodily injury or property damage caused intentionally or maliciously by or at the direction of any insured.  This exclusion applies even if the bodily injury or property damage was not intended or was different than what was intended.  Bodily injury and property damage resulting from the use of reasonable force to protect people or property are excepted from this exclusion[.]

2

(*Id.* ¶ 10.)

In a note dated October 23, 2018, Defendant recorded that the complaint in the Tort Action raised claims for both negligence and intentional tort, so it investigated the facts further.  (Ex. 3 ("Oct. 23, 2018 Claims Note") at 2, Potashner Decl., ECF No. 29-3.) On October 24, 2018, Defendant noted in the claim file that Braha "yelled at Morales to sit down so [Braha] could see the stage—yelling to overcome the concert noise."  (Ex. 6 ("Oct. 23, 2018 Claims Note"), Potashner Decl., ECF No. 29-6.)  The note further stated that "[a]t some point, the kid sat down, and covered his ears" after which Morales's father "accused Braha (57ish) of pulling [Morales's] hair, got security to come down and make a report."  (*Id.*)  According to Defendant's investigation, Braha denied pulling Morales's hair.  (Def.'s 56.1 ¶ 17.)

Defendant retained Cardinal Claims Service ("Cardinal") to investigate the Tort Action.  (*Id.* ¶ 24.)  Cardinal tendered a report to Defendant dated November 2, 2018. (*Id.*)  The report indicated that Braha continued to maintain that "he did not touch or hit [Morales] either on purpose or accidentally" and that he did not pull Morales's hair.  (Ex. 11 ("Cardinal Report") at 3, Potashner Decl., ECF No. 29-11)  The report also stated that Braha had been charged with simple assault and that he "took a plea on the count of disorderly persons wherein [Braha] paid a $500 fine." (*Id.* at 4.)  According to the report, Braha's attorney indicated to Cardinal that Braha took the plea "based on the fact that the judge assigned to the case has an autistic child as well as the fact that the parents of the plaintiff were extremely aggressive in their attitude and position in this matter."  (Def.'s 56.1 ¶ 27.)

According to Defendant, Braha admitted guilt for the assault and accepted responsibility as part of his guilty plea.  (Def.'s 56.1 ¶ 44.)  Defendant claims that Braha admitted to pulling Ryan Morales's hair.  (*Id.* ¶ 43.)  Plaintiff disputes that Braha made such an admission, and in any event, objects to the Court's consideration of the allocution.[2]  (Pl.'s Resp. 56.1 ¶ 43, ECF No. 33-2.)

On November 7, 2018, Defendant disclaimed coverage of Braha for the lawsuit, and advised that the incident did not constitute an "occurrence" as defined by the Sterling Policy and that the incident fell within the intentional acts exclusion.  (Def.'s 56.1 ¶ 21; Ex. 9, Potashner Decl., at 41–42,[3] ECF No. 29-9.)  In the disclaimer, Defendant explained that "there are no facts or alleged facts supporting a negligence claim" and that "the use of the word 'negligence' in the tort [c]omplaint does not trigger any defense or potential indemnification obligation to you."  (*Id.* ¶ 22.)  The explained further that "[t]he claims . . . are for bodily injury or property damage caused intentionally or maliciously by [Braha, which] is excluded from coverage[.]"  (Ex. 9, Potashner Decl., at 42.)  Defendant reaffirmed its disclaimer on January 30, 2019, noting that, in addition to its previously asserted grounds for disclaimer, Braha had breached his duty to cooperate with Defendant.  (*Id.* ¶ 23.)

Plaintiff issued to Braha a "LibertyGuard Personal Liability Production Policy" (the "Liberty Policy") with a policy period from February 17, 2018, to February 17, 2019. (*Id.* ¶ 31.)  The Liberty Policy provides excess liability coverage as follows:  "We will

---

[2] Plaintiff argues that New Jersey's Civil Reservation rule, which provides that a "plea shall not be evidential in any civil proceeding, precludes the Court's consideration of Braha's plea allocution.  (Pl.'s Mem. at 19–22, ECF No. 34-19.)  Defendant argues that the Court may consider it.  (Def.'s Opp'n at 5–9, ECF No. 35-5.)  Because the Court makes its determination based on the allegations in the state court complaint alone, the Court need not decide this issue.

[3] Citations to this exhibit refer to the bates stamp numbers.

pay all sums in excess of the retained limit and up to our limit of liability for damages because of an occurrence resulting in bodily injury, personal injury or property damage to which this policy applies and for which the insured is legally liable." (*Id.* ¶ 32.) The Liberty Policy defines "occurrence" and "bodily injury" substantially the same as the Sterling Policy." (*Id.* ¶ 33.) The Liberty Policy excludes from coverage, among other exclusions, "bodily injury, personal injury, or property damage: which is either expected or intended by any insured even if the resulting bodily injury, personal injury or property damage: if of a different kind, quality or degree than initially expected." (*Id.* ¶ 34.)

By letter dated February 20, 2019, Plaintiff agreed to defend Braha in the Tort Action subject to a reservation of rights and partial disclaimer. (*Id.* ¶ 39.) Plaintiff claims that it agreed to "drop down and defend only because [Defendant] denied any duty to defend." (*Id.* ¶ 40.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *See Celotex Corp.*, 477 U.S. at 325. "But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his

5

showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis omitted) (quoting W. Schwarzer, Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984)); *see also Leone v. Owsley*, 810 F.3d 1149, 1153–54 (10th Cir. 2015) (collecting cases). Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

"[T]he duty to defend is exceedingly broad and an insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage." *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (N.Y. 2006) (quotation marks omitted). It follows then "that an insurer must afford its insured a defense unless it can show that the allegations of the complaint put it solely within the policy exclusion[.]" *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162–63 (N.Y. 1992). "If the claims asserted, though frivolous, are within policy coverage, the insurer must defend irrespective of ultimate liability[.]" *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985). When an insurer claims that an exclusion applies, "it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other

reasonable interpretation[.]" *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (N.Y. 1984)
(citations omitted).

"While the allegations in the complaint may provide the significant and usual touchstone
for determining whether the insurer is contractually bound to provide a defense, the contract
itself must always remain a primary point of reference[.]" *Fitzpatrick v. Am. Honda Motor Co.*,
78 N.Y.2d 61, 68 (N.Y. 1991). Thus, "the issue of whether the insurer has a duty to defend can
be determined by comparing the allegations made in the complaint to the terms of the insurance
policy[.]" *Merrimack Mut. Fire Ins. Co. v. Carpenter*, 224 A.D.2d 894, 895 (3d Dep't 1996).
"The analysis depends on the facts which are pleaded, not the conclusory assertions."
*Mugavero*, 79 N.Y.2d at 159.

The Sterling Policy does not cover "liability for bodily injury or property *caused
intentionally or maliciously* by or at the direction of any insured. . . . even if the bodily injury or
property damage was not intended or was different than what was intended." (Def.'s 56.1 ¶ 10.)
As alleged in the Tort Action, Braha confronted Morales and intentionally and maliciously
subjected Morales to a battery. (Tort Compl. ¶ 17.) Of course, battery is intentional conduct, not
negligent. *See Cerilli v. Kezis*, 16 A.D.3d 363, 364 (2d Dep't 2005) ("[T]he elements of battery
are bodily contact, made with intent, and offensive in nature[.]"); *see also Mazzaferro v. Albany
Motel Enters., Inc.*, 127 A.D.2d 374, 376 (3d Dep't 1987) ("New York has adopted the
prevailing modern view that, once intentional offensive contact has been established, the actor is
liable for assault and not negligence, even when the physical injuries may have been inflicted
inadvertently."). Therefore, the complaint in the Tort Action did not trigger Defendant's duty to
defend because the allegations establish intentional battery, or "bodily injury . . . caused
intentionally" by Braha, not negligence. (Def.'s 56.1 ¶ 5.)

Still, Plaintiff argues that the complaint's inclusion of two negligence allegations that refer to "defendants," "raise the reasonable possibility of coverage so as to trigger the duty to defend" Braha.  (Pl's Mem. at 14, ECF No. 34-19.)  The allegations upon which Plaintiff relies are that "the above-mentioned personal injuries were caused solely by and through the negligence and/or intentional tort of defendants" and that "as a result of the negligence and/or intentional tort of defendants . . ."  (Pl.'s Mem. at 14; *see also* Tort Compl. ¶¶ 19–20.)  But, these two allegations are conclusory and do not provide "any supporting factual allegations" establishing that Braha is alleged to have acted negligently.  *See Scalzo v. Cent. Co-Op. Ins. Co.*, 186 A.D.3d 998, 1000 (4th Dep't 2020) (no duty to defend where factual allegations that established intentional conduct did not support a negligence cause of action); *Pa. Millers Mut. Ins. Co. v. Rigo*, 256 A.D.2d 769, 770–71 (3rd Dep't 1998) (no duty to defend despite negligence cause of action because the "claim is conclusory and unsupported by any facts in the record").  Indeed, all of the negligence-related allegations, *i.e.,* duty and breach, refer only to Live Nation, and Live Nation is not alleged to have engaged in any intentional conduct.  Therefore, the two allegations to which Plaintiff refers are insufficient to trigger Defendant's duty to defend.

Plaintiff's cases are inapposite.  Each of the cases involve analyses of the term "accident" and the "intentional act" exclusion[4] and none involve an exclusion that applies regardless of whether the bodily injury was intended.  New York courts interpret the "intentional act" exclusion to exclude only bodily injury that is an intended or expected result from an intentional

---

[4] Each of Plaintiff's cases analyze whether the alleged bodily injury was "expected or intended" by the insured, *i.e.,* an "accident," which is a question that the Sterling Policy's exclusion expressly does not consider when the alleged conduct was intentional.  *See Merrimack Mut. Fire Ins. Co. v. Carpenter*, 224 A.D.2d 894, 895 (3d Dep't 1996) (analyzing whether the incident could be considered an "accident" pursuant to the policy); *Trafalski v. Allstate Ins. Co.*, 258 A.D.2d 888, 889 (4th Dep't 1999) (same); *N.Y. Cent. Mut. Fire Ins. Co. v. Wood*, 36 A.D.3d 1048, 1049 (3d Dep't 2007) (analyzing whether incident was "expected" or "intended"); *Guzy v. N.Y. Cent. Mut. Fire. Ins. Co.*, 146 A.D.3d 1143, 1144 (3d Dep't 2017) (same); *Massa v. Nationwide Mut. Fire Ins. Co.*, 74 A.D.3d 1661, 1662–63 (3d Dep't 2010) (same); *Merchants Ins. of New Hampshire, Inc. v. Weaver*, 31 A.D.3d 945,945–46 (3d Dep't 2006) (same).

act. *See, e.g., N.Y. Cent. Mut. Fire Ins. Co. v. Wood*, 36 A.D.3d 1048, 1049 (3d Dep't 2007) ("The dispositive inquiry to determine whether [bodily injury was caused by an intentional act] is 'whether there is any possible factual or legal basis upon which to find that the bodily injuries inflicted . . . were not 'expected or intended'" (quoting *Rigo*, 256 A.D.2d at 770)). This is the same inquiry as the accident analysis. *See Cook*, 7 N.Y.3d at 137–39 ("accident" is unintended or unexpected harm from intentional conduct or expected harm from unintentional conduct). In other words, the "intentional act" and "accident" policy language assess the policyholder's intent vis-à-vis "bodily injury." The exclusion in Defendant's policy, however, assesses the policyholder's intent vis-à-vis the conduct. Thus, it is irrelevant whether Braha is alleged to have intended bodily harm. Instead, the relevant question is whether Braha is alleged to have engaged in intentional conduct that caused bodily injury, and the answer is yes. Therefore, Defendant had no duty to defend Braha in the Tort Action.

Even if the Court were to look to facts adduced by Defendant in its own investigation as Plaintiff urges the Court to do, the Court's conclusion would remain unchanged. The facts Defendant discovered in its investigation likewise did not establish a duty to defend because those facts confirmed that Braha is accused of engaging in intentional conduct. Plaintiff points out that Braha told Cardinal Investigators that he did not touch nor intend to touch Morales. (Pl.'s Mem. at 15.) Plaintiff posits that "if Braha touched Morales's hair at all, it was accidentally touched and the prior dealings resulted in Morales['s] belief that Braha pulled on his hair when it was really nothing more than an accident." (*Id.*) But, Plaintiff's theory of what transpired is of no consequence as its theory is not alleged in the complaint. And, as an aside, Plaintiff's own evidence does not support its theory because Braha did not indicate that he touched Morales "accidentally." Rather, he maintained that he did not touch Morales at all.

(Cardinal Report at 3.)  In any event, Braha's denial of the conduct does not change the nature of the complaint, which is the "touchstone" of the Court's analysis.  *Fitzpatrick*, 78 N.Y.2d at 68. While the Court agrees that an insurer cannot use a third-party complaint as a "shield," *id.* at 63, neither can an insurer force another insurer to defend based on unsupported and implausible theories of liability.  *See N.Y. Cas. Ins. Co. v. Ward*, 139 A.D.2d 922, 923 (4th Dep't 1988) (rejecting insured's "conclusory and unsupported" claims that his conduct was negligent and finding no duty to defend).

In short, Plaintiff's arguments ignore the text of the Sterling Policy.  Specifically, Plaintiff ignored the policy's express exclusion of bodily injury caused by intentional conduct, regardless of whether the injury was intended.  Because Braha is alleged to have engaged in a battery, and the negligence allegations are either conclusory or refer to another defendant, Defendant has no duty to defend.

## CONCLUSION[5]

For the foregoing reasons, Plaintiff's motion for partial summary judgment is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
        September 29, 2022

/s/ LDH
L&#x1D00;SHANN D&#x1D07;ARCY HALL
United States District Judge

---

[5] Because the Court finds no duty to defend based on the intentional conduct exclusion, the Court need not decide whether Defendant properly disclaimed coverage based on Braha's failure to cooperate.